**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

        **10-CR-6232-CJS-MWP**

    v.

**NOTICE OF MOTION**

**ISRAEL MENDEZ-MALDONADO,**

        **Defendant.**

| | |
|---|---|
| **MOTION BY:** | Anne M. Burger, Assistant Federal Public Defender, Attorney for defendant. |
| **DATE TIME & PLACE:** | Before the Honorable Marian W. Payson, United States Magistrate Judge, 2310 U.S. Courthouse, Rochester, New York 14614, on March 24, 2011 at 9:00 a.m. |
| **SUPPORTING PAPERS:** | Affirmation of Anne M. Burger of March 15, 2011. |
| **RELIEF REQUESTED:** | An order granting the relief requested herein. |
| **DATED:** | Rochester, New York, March 15, 2011. |

          s/Anne M. Burger
          ANNE M. BURGER
          Assistant Federal Public Defender
          28 East Main Street, Ste. 400
          Rochester, New York 14614
          585-263-6201
          anne_burger@fd.org

TO:    Marisa Miller, AUSA

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

          **v.**

**ISRAEL MENDEZ-MALDONADO,**

          **Defendant.**

**10-CR-6232-CJS-MWP**

**AFFIRMATION**

      Anne M. Burger, Assistant Federal Public Defender for the Western District of New York, affirms as follows:

      1.      I am an attorney licensed to practice law in the State of New York and in the United States District Court for the Western District of New York, and I represent Israel Mendez-Maldonado.

      2.      I am familiar with this case by reason of my investigation of this matter, conversations with my client and others, and my review of the discovery material provided to date by the government.

      3.      This affirmation is submitted in support of various forms of relief requested herein, and is based upon the facts as I know them, the Federal Rules of Criminal Procedure, the Federal Rules of Evidence, the United States Constitution, and other pertinent statutes and law.

**INDEX**

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.    DISMISSAL OR SUPPRESSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.   *BRADY v. MARYLAND*, 373 U.S. 83 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.    DISCOVERY AND INSPECTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.     DISCLOSURE OF WITNESS STATEMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

VI.    DISCLOSURE PURSUANT TO FED.R. EVID. 404(b), 608 and 609 . . . . . . . . . . . . . . 10

VII.   PRESERVATION OF ROUGH NOTES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VIII.  FURTHER RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

I.  INTRODUCTION

1.      Israel Mendez-Maldonado is charged in a one-count indictment with Unlawful Reentry after Removal under Title 8 U.S.C. 1326(a) and (b)(2).  The charges stem from Mr. Mendez-Maldonado's arrest during a Border Patrol check at the Rochester bus station.

2.      In the early morning of January 31, 2010, Mr. Mendez-Maldonado was encountered by Border Patrol agents at the Rochester bus station.  After being questioned as to his origin by Border Patrol, he was arrested.  He was fingerprinted photographed, and charged, by criminal complaint, with one count of Illegal Reentry of a Removed Alien.  He was later indicted upon the above-noted charge.   Mr. Mendez-Maldonado requests that the Court grant the following motions.

II.  DISMISSAL OR SUPPRESSION

3.      The prosecution alleges in Count One of the indictment that Israel Mendez-Maldonado was previously removed from the United States in 2001 and 2007; according to Mr. Mendez-Maldonado's A-file documents provided during discovery, he was subjected to expedited removal in 2001 and, in 2007, he was removed again based upon the 2001 order.  These removals constitute an element of Count One.  Mr. Mendez-Maldonado moves to dismiss Count One of the indictment or, in the alternative, to suppress from the use at trial evidence of the removals on two grounds:  that the 2001 removal proceeding itself was fundamentally unfair and violated his right to due process of law; and that 8 U.S.C. § 1326 is unconstitutional as applied, as it requires the use of an administrative determination as an element of the offense charged.

4

The Expedited Removal Statute

4.      Based upon a review of the discovery, it appears that Mr. Mendez-Maldonado was subjected to expedited removal as an aggravated felon pursuant to 8 U.S.C. § 1228(b). *See* Exhibit A.  The statute authorizes the summary removal, without a hearing before an immigration judge, of certain persons.  *See* 8 U.S.C. § 1228(b).  Absent waiver, the removal order in such cases may not be executed for 14 days to permit the alien to seek judicial review. *See*  8 U.S.C. § 1228(b)(3).  The alien must be given "reasonable notice of the charges", a "reasonable opportunity to inspect the evidence and rebut the charges", and the opportunity to retain private counsel if he chooses.  8 U.S.C. § 1228(b)(4).

The Removal Proceeding was Fundamentally Unfair

5.      It is well settled that the procedures employed and safeguards afforded to aliens in deportation or removal hearings must satisfy due process.  *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."); *see also Doe v. Simon*, 221 F.3d 137, 139 (2d Cir.2000).

6.      Where a removal order is used to form an element of a criminal offense without the opportunity for judicial review of the underlying order, an alien may collaterally challenge the validity of the order.  *United States v. Mendoza-Lopez*, 481 U.S. 828, 838-39 (1987).  Congress subsequently enacted rules permitting collateral challenge of such an order where the alien

> (1) . . . exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review;

5

and (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

    7.    Here, Mr. Mendez-Maldonado was represented by immigration counsel who, according to the discovery provided, appeared in connection with his immigration proceedings. *See* Exhibit B.  Mr. Mendez-Maldonado was represented by the same law firm in immigration and in connection with his criminal charges.  Later, in 2001, following a conviction after trial, an immigration official met with Mr. Mendez-Maldonado and persuaded him to waive his right to see an immigration judge.  Mr. Mendez-Maldonado's immigration attorney was, inexplicably, not present for these discussions.  The immigration official informed Mr. Mendez-Maldonado that one of the immigration charges related to his criminal conviction.  He neither read nor otherwise explained the charges to Mr. Mendez-Maldonado.  Nor did he explain Mr. Mendez-Maldonado's rights to him or provide him with a written copy of the charges or his rights in Spanish.  Only after he signed the papers and waived his rights did he receive a copy of the papers - in English.  Mr. Mendez-Maldonado was not sufficiently fluent in English to allow him to read and fully understand the papers.  Mr. Mendez-Maldonado waived his rights and signed the documents because the immigration official told him it could take up to one year to see an immigration judge.  On the other hand, he was told that he would be in Mexico within two weeks if he signed the papers.

    8.    Here, the immigration official effectively eliminated Mr. Mendez-Maldonado's right to obtain judicial review when he failed to advise him of his rights - including his right to appeal or seek judicial review.  Notably, a collateral challenge to the use of a removal order is permitted where the administrative proceeding which generated the order effectively eliminated

6

the right of the alien to obtain judicial review. *United States v. Mendoza-Lopez*, 481 U.S. 828.

9. At the time he was arrested on the underyling criminal charges, Mr. Mendez-Maldonado believed he had legal status in the United States. He had lived here most of his life. His mother, brother and uncle also had legal status in the United States. Mr. Mendez-Maldonado initially told the immigration official in 2001 that he wanted to see an immigration judge. Mr. Mendez-Maldonado contends that he should have been afforded an opportunity to appear before an immigration judge who would have determined whether he was eligible for relief from removal. Instead, he was isolated from the assistance of his retained attorney and told that if he insisted on seeing a judge that it could take up to a year. No explanation of his rights or the consequences of waiver was provided.

10. Finally, Mr. Mendez-Maldonado's waivers were neither knowing nor voluntary. The immigration official utterly failed to advise him of his rights including his right to seek judicial review. Accordingly, he was deprived of any realistic opportunity to seek judicial review of the expedited removal order.

11. The above errors violated Mr. Mendez-Maldonado's due process rights; as a result, the government should be barred from using the removal order to establish an element of Count I of the Indictment.

Separation of Powers

12. By requiring the use of an administrative determination as an element of the charged offense, 8 U.S.C. §1326 is unconstitutional as applied to Mr. Mendez-Maldonado. As an element of Count One of the indictment, the government is required to prove that Mr.

7

Mendez-Maldonado was "denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding." 8 U.S.C. §1326(a)(1). This constitutes a violation of the Constitution's separation of powers requirement. In *Mendoza-Lopez*, the Supreme Court held that, "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." *Mendoza-Lopez*, 481 U.S. at 837-38.

13. The *Mendoza-Lopez* Court was troubled by the use of an administrative proceeding's result to establish an element of a criminal offense. *Id.* at 838 n. 15. The Court noted that the propriety of using an administrative ruling to establish an element of an offense is "open to question." *Id*. The Court did not reach this question because it held that, "at a minimum, the result of an administrative proceeding may not be used as a conclusive element of a criminal offense where the judicial review that legitimated such a practice in the first instance has effectively been denied." *Id*.

14. In Mr. Mendez-Maldonado's case, there was no review of the administrative proceeding. This was the direct result of the actions of the immigration official. As a result, the use of the administrative determination against Mr. Mendez-Maldonado renders the charged offense, 8 U.S.C. § 1326, unconstitutional as to him.

### III. *BRADY v. MARYLAND*, 373 U.S. 83 (1963)

15. The Court has issued a general *Brady* Order as part of the Court's Scheduling Order. In addition, the defense makes a specific *Brady* Demand on the prosecution. Exhibit C.

8

The *Brady* Order and *Brady* Demand may give the defendant different rights under the still-evolving *Brady* doctrine. *See United States v. Auguis,* 427 U.S. 97 (1976); *United States v. Bagley,* 473 U.S. 667 (1985); *Kyles v. Whitley,* 514 U.S. 419 (1995) and compare with *United States v. Coppa,* 267 F.3d 132, 142 (2d Cir. 2001). Accordingly, the defense relies on the *Brady* Order and *Brady* Demand to put the government on notice and protect the rights of the defendant.

## IV. DISCOVERY AND INSPECTION

16. The Discovery Order contained in the Court's Scheduling Order should govern the issues of discovery.

## V. DISCLOSURE OF WITNESS STATEMENTS

17. Mr. Mendez-Maldonado moves for disclosure of witness statements pursuant to 18 U.S.C. § 3500 ("*Jencks Act*") and FED.R.CRIM.P. 26.2. He is entitled to each witness' statement after the witness has completed his or her testimony on direct examination.

18. Pursuant to FED.R.CRIM.P. 26.2, the *Jencks Act* is applicable to pre-trial suppression hearings, sentencing hearings, revocation or modification of supervised release and probation hearings, detention hearings and preliminary examinations. The defendant moves for an order requiring production of *Jencks Act* materials, namely all statements and reports in the possession of the United States which were made by government witnesses or prospective government witnesses and which relate to the subject matter about which those witnesses may testify, as per the *Jencks Act*, 18 U.S.C. § 3500, and FED.R.CRIM.P. 26.2. Under the *Jencks* Act and FED.R.CRIM.P. 26.2, a statement is defined as: a written statement made by said witness and

signed or otherwise adopted or approved by him; a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or a statement, however taken or recorded, or a transcription thereof, if any, made by a witness to a grand jury. 18 U.S.C. 3500(e); FED.R.CRIM.P. 26.2(f).  Also falling under this definition are: statements which fairly and fully reflect, without distortion, made to a government agent by a witness, *United States v. Scotti,* 47 F.3d 1237 (2d Cir. 1995); any and all rough notes of witness interview(s) taken or obtained in any investigation of the defendant including federal, state, local, and other investigations whether or not the contents thereof have been incorporated in official records; any notes and memoranda made by government counsel during the interview of any witness(es) intended to be called by the government in their direct case, *Goldberg v. United States*, 425 U.S. 94, 101-108 (1976); and all surveillance reports made or adopted by a witness. *United States v. Petito*, 671 F.2d 68, 71 (2d Cir. 1981).

VI.  DISCLOSURE PURSUANT TO FED.R. EVID. 404(b), 608 and 609

19. Pursuant to FED.R.EVID. 404(b), Mr. Mendez-Maldonado respectfully requests that the government notify him of any evidence that the government contends would be admissible under FED.R.EVID. 404(b).  In order to permit Mr. Mendez-Maldonado the opportunity to file appropriate motions prior to trial, he requests that he be fully apprised of evidence of other crimes, wrongs, or acts or transactions involving the defendant which are outside the scope of the indictment and which the government will seek to introduce. FED.R.EVID. 404(b).

10

20. Mr. Mendez-Maldonado should be put on notice of the exact nature of this evidence, the witnesses pertaining thereto, the documents in support thereof, and the theory upon which the government asserts that admissibility rests. By notifying him in advance of trial, he can file appropriate suppression motions permitting the Court to make pretrial determinations regarding the admissibility of any potential Rule 404(b) evidence proffered by the prosecution.

21. Mr. Mendez-Maldonado also requests, pursuant to Rules 608 and 609, pre-trial disclosure of all evidence the government intends to use to impeach his credibility if he testifies. If the government intends to use such evidence, Mr. Mendez-Maldonado requests a pretrial hearing to determine its admissibility.

22. Rule 608(b) allows use of specific instances of misconduct against a witness. If the government intends to use instances of misconduct against Mr. Mendez-Maldonado if he testifies, it is requested that the instances be disclosed before trial.

23. Due process requires this material be provided to the defense prior to trial to aid Mr. Mendez-Maldonado in deciding whether to proceed to trial or accept a plea. The Second Circuit has suggested that this information should be produced at this stage in the proceedings. *See United States v. Avellino*, 136 F.3d 249 (1998).

VII. PRESERVATION OF ROUGH NOTES

24. Mr. Mendez-Maldonado moves the Court for an order requiring all government agents and officers who participated in the investigation to retain and preserve all rough notes taken as part of their investigation, whether or not the contents of the notes are incorporated in official records. This motion is made so that the trial court can determine whether disclosure of

11

the notes is required under *Brady*, *Agurs, Giglio*, the *Jencks Act* (18 U.S.C. § 3500), FED.R.CRIM.P. 26.2, and/or the Fifth and Sixth Amendments of the United States Constitution.

25. This motion puts the government and its agents on notice that, from this point on, any and all rough notes referred to above should be preserved. Any destruction of notes after this request for preservation cannot be claimed to have been made in good faith. *See United States v. Koskerides*, 877 F.2d 1129 (2d Cir. 1989); *United States v. Elusma*, 849 F.2d 76 (2d Cir. 1988); *United States v. Sanchez*, 635 F.2d 47 (2d Cir. 1980); *United States v. Bufalino*, 576 F.2d 446 (2d Cir. 1978).

26. Mr. Mendez-Maldonado also requests that this Court direct the government to preserve notes made by government witnesses, including state and local, in the event they later become discoverable as either the defendant's statement, or that of another witness. *United States v. Scotti*, 47 F.3d 1237 (2d Cir. 1995).

27. Simply labeling notes as "rough notes" does not minimize the government's duty to produce them. For example, in *Williams v. United States*, 338 F.2d 286 (D.C. Cir. 1964), the court stated that notes containing abbreviations, idiomatic language or phrases set off in quotations may be deemed to be a substantially verbatim recital of the witness' statement.

28. In *United States v. McKeever*, 271 F.2d 669 (2d Cir. 1959), the court held that notes made by an FBI agent, although not technically discoverable under the *Jencks Act* as an exact recital of the witness' statement, could still be discoverable. Factors to be considered are the extent to which the language comports with that of the witness, the length of the report in comparison to the witness' utterances and the lapse of time between the interview and the transcription. *Id.* at 674-75, *citing Palermo v. United States*, 360 U.S. 343, 355 (1950).

AO 72A
(Rev. 8/82)

29.     If it is doubtful whether such notes are subject to discovery, the government should submit them to the court for an *in camera* determination to determine whether they qualify as witness statements. *Scotti*, 47 F.3d at 1249.

## VIII.  FURTHER RELIEF

30.     The requests contained in these motions are not meant to limit or preclude future requests by Mr. Mendez-Maldonado for further relief from this Court.

31.     Mr. Mendez-Maldonado requests that this Court grant such other and further relief as is just and proper.

Dated:       March 15, 2011
             Rochester, New York

                                    Respectfully submitted,


                                     s/Anne M. Burger
                                    Anne M. Burger
                                    Assistant Federal Public Defender
                                    28 E. Main Street, Suite 400
                                    Rochester, New York 14614
                                    Anne_Burger@fd.org
                                    Attorney for Israel Mendez-Maldonado

TO:     Marisa Miller, AUSA

AO 72A
(Rev. 8/82)

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

    v.            11-CR-6232(CJS)(P)

**ISRAEL MENDEZ-MALDONADO,**

    **Defendant.**

### CERTIFICATE OF SERVICE

 I hereby certify that on March 15, 2011, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to the following:

1. Marisa Miller, AUSA – marisa.miller@usdoj.gov

 And, I hereby certify that I have mailed by the United States Postal Service the document to the following non-CM/ECF participant(s).

1.

              s/Diane Pomponio
              Federal Public Defender's Office
              28 E. Main Street, Suite 400
              Rochester, New York 14614
              585-263-6201

AO 72A
(Rev. 8/82)