UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                              Plaintiff,

                                                           REPORT & RECOMMENDATION

                    v.                                     10-CR-6232CJS

ISRAEL MENDEZ-MALDONADO,

                              Defendant.

_____


## PRELIMINARY STATEMENT

By Order of Hon. Charles J. Siragusa, United States District Judge, dated

November 24, 2010, all pretrial matters in the above-captioned case have been referred to this

Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 16).

Defendant Israel Mendez-Maldonado ("Mendez") is charged in a one-count

indictment with illegal reentry into the United States after having been deported following a

conviction for an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2).  (Docket

# 15).  The indictment alleges that Mendez was previously deported on May 1, 2001 and July 3,

2007.  (*Id.*).

Currently pending before the Court is Mendez's motion to dismiss the indictment

or, in the alternative, to suppress from use at trial evidence of Mendez's two prior removals.[1]

(Docket # 23).  Specifically, Mendez challenges as fundamentally unfair the 2001 removal

_____

[1]  Mendez's omnibus motion also sought rulings pursuant to Federal Rules of Evidence 404, 608 and 609,
*Jencks* material and the preservation of rough notes.  (Docket # 23).  Each of these requests was either resolved by
the parties or decided in open court by the undersigned on June 2, 2011.  (Docket # 33).

procedure that resulted in the order on which his 2001 and 2007 deportations were based.  (*Id*. at

5).  For the reasons discussed below, I recommend that the district court deny Mendez's motion.

## FACTUAL BACKGROUND

Mendez is a Mexican citizen who has lived most of his life in the United States

without legal status.  (Docket # 23, Ex. B at ¶ 2).  Mendez's mother and brother are legal

permanent residents.  (Docket # 30 at ¶ 4).

In July 2000, Mendez was convicted of robbery in the third degree, N.Y. Pen. L.

§ 160.05, and sentenced to a one-year term of imprisonment.  (Docket # 26 at 2).  Immigration

proceedings commenced against Mendez in August 2000.  (*Id*.).  At that time, Mendez had hired

a lawyer to represent him in both the criminal and immigration proceedings.  (Docket # 23, Ex. B

at ¶ 1).

In April 2001, an immigration officer came to the jail in which Mendez was

incarcerated and served him with a Notice of Intent to Issue Final Administrative Removal Order

(the "Notice").  (Docket # 23, Ex. A).  The Notice advised Mendez that he was deportable under

8 U.S.C. § 1227(a)(2)(A)(iii) as a result of his conviction for an aggravated felony.  (*Id*.).  The

Notice also advised Mendez, *inter alia*, of his right to retain counsel, his right to challenge

removal and his right to request withholding of removal; it also stated that he could seek judicial

review of any final administrative order.  (*Id*.).  Mendez signed the Notice on April 18, 2001, and

checked boxes indicating that he did not wish to contest the charges, admitting that he was

deportable and waiving the fourteen-day period of execution of the Final Removal Order.  (*Id*.).

2

According to Mendez, at the time that he was served with the Notice, the immigration official informed him that he had the option of appearing before an immigration judge or being deported without appearance before a judge, but did not advise him that he could speak to an immigration attorney prior to making this decision.  (Docket # 23, Ex. B at ¶ 3).  The official also told Mendez that it could take as long as one year to see the immigration judge and that, alternatively, he could be in Mexico within two weeks.  (*Id*. at ¶¶ 3, 4).  The immigration official did not read the form to Mendez in Spanish (indeed, the form indicates that the official explained the form to Mendez in English), nor did he provide Mendez with a copy of the form. (*Id*.).  Mendez further asserts that the immigration official did not tell him that he had the right to challenge his deportation or that he could present information to the immigration judge about his life, background and family living in the United States.  (*Id*. at ¶ 4).  Mendez asserts that if the immigration officer had explained these matters to him, he would not have signed the form consenting to deportation.  (*Id*.).  Mendez's attorney was not present during this encounter with the immigration officer.  (*Id*. at ¶ 3).

In support of the pending motion, Mendez has submitted an affidavit of his older brother, Miguel Mendez ("Miguel"), asserting that he and his mother have suffered emotionally as a result of Mendez's deportation.  (Docket # 30, Ex. B).  Specifically, Miguel's affidavit recounts that their family came to the United States when Mendez was four or five years old and that their father was physically abusive with both boys and their mother.  (*Id*. at ¶ 1).  The violence continued until Mendez's father left the home, when Mendez was about seventeen. (*Id*.).  According to Miguel, when their father was abusive to their mother, he and Mendez attempted to protect her.  (*Id*. at ¶ 2).  Miguel alleges that Mendez's deportation affected him

emotionally and caused their mother particular distress.  (*Id*. at ¶¶ 3-4).  Specifically, he states:

"[M]y mother . . . [was] emotionally devastated.  My mother started drinking.  Her drinking

became a problem.  I believe she started drinking as a way to cope with Israel being gone." (*Id*.

at ¶ 3).

        The record contains no further information about the nature, duration or effects of

their mother's alcohol dependency.


## DISCUSSION

        In this case, Mendez is charged under 8 U.S.C. § 1326 with unlawfully entering

the United States after deportation.  (Docket # 15).  That statute provides that an alien-defendant

may collaterally attack the underlying deportation order that forms an element of the charged

offense only if the alien demonstrates that:

> (1) the alien exhausted any administrative remedies
> that may have been available to seek relief against
> the order;
>
> (2) the deportation proceedings at which the order
> was issued improperly deprived the alien of the
> opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).  *See also United States v. Mendoza-Lopez*, 481 U.S. 828, 840 (1987)

(government could not rely on deportation orders as proof of element of criminal offense where

aliens' "waivers of their rights to appeal were not considered or intelligent, [and aliens thus] were

deprived of judicial review of their deportation proceeding").  All three requirements must be

met in order to challenge the deportation order. *United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002).

In order to establish that the underlying order was fundamentally unfair, an alien must demonstrate a "fundamental procedural error and prejudice resulting from that error." *Id*. at 159. An alien may demonstrate the requisite prejudice only by showing that he "might have been deported in error" or, stated another way, that "absent the procedural errors, he would not have been removed." *Id*.[2] Thus, even assuming that Mendez could establish a procedural error in the underlying deportation proceedings, he must still demonstrate prejudice.

By statute, "an alien convicted of an aggravated felony shall be conclusively presumed to be deportable from the United States." 8 U.S.C. § 1228(c). Here, Mendez has been convicted of robbery in the third degree. The parties do not dispute that this crime qualifies as an aggravated felony; indeed, the Second Circuit has held that attempted robbery in the third degree constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)(G). *Fernandez-Antonia*, 278 F.3d at 160.

Mendez contends that had he appeared before an immigration judge, he would have been eligible for discretionary relief from deportation under the "extreme hardship" provision of 8 U.S.C. § 1182(h) (commonly referred to as Section 212(h)). (Docket # 30). Section 212(h) provides that the Attorney General may exercise discretion to waive a basis of inadmissibility for aliens applying for visas, admission or an adjustment of status. 8 U.S.C.

---

[2] The Second Circuit has declined to determine the precise "quantum of proof necessary for an alien to succeed in his demonstration of prejudice." *Id*. at 159-60 (noting that courts generally require either a "reasonable likelihood" or "plausible" showing that the alien would not have been deported). *Accord United States v. Perez*, 330 F.3d 97, 104 n.6 (2d Cir. 2003).

§ 1182(h); *Fernandez-Antonia*, 278 F.3d at 160; *Jankowski-Burczyk v. INS*, 291 F.3d 172, 175 n.2 (2d Cir. 2002).  To qualify for this relief, the alien must demonstrate that he is the "spouse, parent, son, or daughter" of a citizen or lawful permanent resident and that denial of his admission "would result in extreme hardship" to the citizen or resident.  8 U.S.C. § 1182(h)(1)(B).[3]

   "Extreme hardship" is construed "quite narrowly" because it entitles the alien to "a form of 'exceptional' relief."  *Fernandez-Antonia*, 278 F.3d at 161 (citing *INS v. John Ha Wang*, 450 U.S. 139, 145 (1981) (*per curiam*)).  "While 'extreme hardship' has no precise definition, the cases are consistent in finding it lacking where the deportation would result in nothing more than the emotional or even financial tribulations which generally follow the separation of a family."  *Chiaramonte v. INS*, 626 F.2d 1093, 1101 (2d Cir. 1980) (allegations that son would feel "sad" and "alone" amount to allegations of "normal melancholy," which are insufficient to demonstrate "extreme hardship").  *See also Luna-Rodriguez v. INS*, 104 F.3d 313, 315 (10th Cir. 1997) ("[s]everal nonexclusive factors are relevant to the determination of extreme hardship: 'the alien's age; the length of his residence in the United States; his family ties in the United States and abroad; his health; the economic and political conditions in the country to which he may be returned; his financial status, business, or occupation; the possibility of other means of adjustment of status; his immigration history; and his position in the community'").  Further, the Attorney General has promulgated regulations providing that Section 212(h)

---

[3] Mendez may be statutorily barred from seeking relief under Section 212(h).  Section 212(h) affords relief only to aliens convicted of particular offenses, not including robbery in the third degree.  8 U.S.C. § 1182(h) (providing for waiver of bars to admission pursuant only to 8 U.S.C. §§ 1182(a)(2)(A)(i)(I)-(II), (a)(2)(B), (D), and (E)); *accord Fernandez-Antonia*, 278 F.3d at 160.  As the Court noted in *Fernandez-Antonia*, however, the government has not argued that the statute is inapplicable to Mendez on the basis of his criminal history.  Accordingly, I will address Mendez's claim of hardship on the merits.

discretion "will ordinarily not [be] exercise[d] . . . favorably where the alien has committed a

violent or dangerous crime, but [will be reserved for] 'extraordinary circumstances, such as . . .

cases in which an alien clearly demonstrates that the denial of the application for adjustment of

status ... would result in exceptional and extremely unusual hardship.'"  *Samuels v. Chertoff*, 550

F.3d 252, 254 (2d Cir. 2008) (quoting 8 C.F.R. § 1212.7(d)).  Indeed, "depending on the gravity

of the alien's underlying criminal offense, a showing of extraordinary circumstances might still

be insufficient to warrant a favorable exercise of discretion under [Section 212(h)]."  8 C.F.R.

§ 1212.7(d).

   On the record before me, I find that Mendez has failed to demonstrate "extreme

hardship."  Here, Mendez had offered the affidavit of his brother in support of his contention that

he would have been eligible for discretionary relief under the extreme hardship exception.  While

his brother's affidavit affirms that he suffered emotionally when Mendez was deported, sibling

hardship is not covered by the statute.  *See* 8 U.S.C. § 1182(h).  Accordingly, Mendez must rely

upon his brother's assertions that his mother, a victim of domestic violence, began to drink in

order to cope with Mendez's deportation and developed problems with alcohol.  The record,

however, contains no information regarding the nature, degree, duration or effects of defendant's

mother's problems.

   Certainly, the domestic violence allegations are serious and describe persistent

abuse by Mendez's father and efforts by Mendez and his brother to protect their mother from

such abuse.  At oral argument on this motion, Mendez's counsel referenced legislative findings

regarding the long-lasting psychological trauma caused by domestic violence and argued that the

emotional trauma that Mendez's mother experienced as a result of Mendez's deportation was far

more serious than the type of "melancholy" commonly experienced as a result of familial separation.  Despite these serious allegations, this Court has been unable to find any authority, nor has Mendez offered any, suggesting that such facts establish "extreme hardship" for the purposes of Section 212(h) relief.  *Compare United States v. Garcia-Frausto*, 40 F. App'x 570, 575 (9th Cir. 2002) (mother's declaration that son's deportation made her depressed and "physically ill," coupled with separate declaration from father that he was "devastated," did not establish "extreme hardship") *with Hernandez-Perez v. Mukasey*, 271 F. App'x 592, 593-94 (9th Cir. 2008) (psychiatrist's affidavit asserting that mother would likely attempt suicide was "compelling evidence that [alien's] mother would experience hardship beyond the ordinary consequences of a relative's removal from the United States").  Moreover, the absence of any evidence demonstrating the severity and effects of his mother's alcohol issues leads me to conclude that the Miguel's allegations do not satisfy a showing of "extreme hardship."

Accordingly, I find that Mendez has failed to demonstrate that it is reasonably likely or plausible that he would have been granted relief from deportation under Section 212(h). For this reason, Mendez cannot demonstrate that the entry of the deportation order that forms an element of the pending criminal charge was "fundamentally unfair," and  I recommend that the district court deny Mendez's motion.[4]

---

[4]  I also recommend denial of Mendez's constitutional challenge to the illegal reentry statute as applied to him on the grounds that it violates separation of powers.  (*See* Docket # 23 at 7-8).  Mendez's argument is premised upon dicta in a footnote in the Supreme Court's decision in *Mendoza-Lopez. See* 481 U.S. at 838 n.15.  Since *Mendoza-Lopez*, Section 1326 has been amended to codify an alien's right to collaterally challenge a deportation order as fundamentally unfair.  In this case, the deportation order was not fundamentally unfair, and I find no basis on which to conclude that its use as proof of one element of the charged offense would violate separation of powers.

## <u>CONCLUSION</u>

For the reasons discussed above, I recommend that the district court deny

Mendez's motion to dismiss the indictment and to suppress evidence.  (Docket # 23).


　　　　　　　　　　　　　　　　s/Marian W. Payson
　　　　　　　　　　　　　　　　_____

　　　　　　　　　　　　　　　　MARIAN W. PAYSON
　　　　　　　　　　　　　　　　United States Magistrate Judge

Dated: Rochester, New York
　　　　August 10, 2011

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.[5]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **<u>Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.</u>**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

s/Marian W. Payson
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
August 10, 2011

---

[5]  Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation.  Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).